## The Union Canal Company *versus* Gilfillin.

1. The legislature has the power to require a creditor of an embarrassed corporation or individual to indicate his dissent from measures deemed essential to the common welfare of creditors and debtors, or else suffer the penalty of being held to an assent.

2. The Act of April 10th 1862, relating to the Union Canal Company, provided a scheme to relieve the company from its financial embarrassments. The act directed the calling of a public meeting of the stockholders and bondholders, whereat said stockholders and bondholders, voting separately, might enter into an agreement to carry out the provisions of the act. The act also contained the further provision that every bondholder who " shall fail to file with the president of said corporation, his or her refusal in writing, to concur in the said agreement, within three months from the date thereof, such bondholder shall be taken to have agreed to the same." The court below held that this provision was unconstitutional, in that it impaired the obligation of the contract between the company and the bondholder. *Held*, reversing the court below, that the act was constitutional.

January 22d 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county*: Of July Term 1879, No. 45.

Case stated wherein John G. Gilfillin was plaintiff and the Union Canal Company defendant.

1. The plaintiff holds a number of coupons, amounting in all to the sum of $4200, running from November 1st 1857, to May 1st 1877, inclusive, for interest upon four certain bonds of the defendant, all dated November 1st 1853, being No. 899 for $500, and Nos. 116, 1290, and 1661, for $1000 each, said bonds being secured by a mortgage dated August 23d 1853.

2. Upon April 10th 1862, Pamph. L. 395, and April 22d 1863, Pamph. L. 563, respectively, two certain Acts of Assembly, being supplements to the several acts theretofore passed relating to the Union Canal Company of Pennsylvania, were approved.

Copies of the said acts are annexed hereto as a part of this case stated. [The portions of said acts essential to an understanding of the case will be found in the opinion of this court.—REP.]

3. The said Act of April 10th 1862, was accepted by the corporation defendant at a general meeting of its stockholders, called in accordance with law, and held May 26th 1862.

4. Under and by virtue of the said Act of Assembly, the stockholders of the said corporation defendant, and the holders of the bonds secured by the mortgage of August 23d 1853, at a general meeting duly called and held June 9th 1862, the said stockholders and the said bondholders acting and voting thereat as separate bodies, did, by a majority of the votes of each body, duly taken and counted, enter into an agreement providing for the carrying out of the provisions of the said Act of April 10th 1862, wherein and whereby it was provided, among other things, that all interest

[*Union Canal Co. v. Gilfillin.*]

on the said bonds theretofore accrued or due, or thereafter falling due or accruing, should be paid out of the net income, revenues or profits of the said corporation, accruing after May 1st 1861, and that there should at no time be any coupons paid or payable otherwise than out of and from the clear net income and profits of the business of the corporation, and that said net income and profits should be received in full consideration for its coupons falling due.

5. The notice specified in the proviso to the third section of the Act of April 10th 1862, was duly published, and the plaintiff, who was then the holder of the bonds, the coupons of which are now sued on, had actual knowledge of the said notice and of the matter thereof.

6. The said plaintiff did not actually take part in the making of the said agreement, nor did he signify his assent in writing thereto, nor did he ever file with the president of the said corporation his refusal in writing to concur therein.

7. The whole amount of the bonds secured by the said mortgage of August 23d 1853, and outstanding, is $2,500,000. The whole amount of the bonds so secured, held by persons who did file with the president of the said corporation their refusal in writing to concur in the said agreement, was $85,000.

8. Since the making of the said agreement, to this time, there has not been any clear net income and profits of the business of the said corporation.

9. If the court shall be of opinion that the plaintiff is entitled to recover, judgment shall be entered against the defendant for the sum of $4200 ; otherwise for the defendant.

The court entered judgment for the plaintiff on the case stated, Ludlow, P. J., delivering the following opinion:

" The company defendant, by reason of numerous financial difficulties, obtained certain legislation, especially the two Acts of Assembly referred to in the case stated and made a part thereof.

" The plaintiff, the holder of numerous coupons, with a knowledge of the legislation, was entirely silent upon the subject of the proposed settlements made or to be made under and by virtue of that legislation ; it is now proposed to destroy his right of recovery upon the evidences of the indebtedness held by him against the company, because he has seen fit simply to remain silent. Or, in the language of a clause in sect. 3, Act of 10th April 1862, as he has failed to 'file with the president of such corporation his (or her) refusal, in writing, to concur in said agreement, within three months from the date thereof, such bondholder,' that is, this plaintiff, 'shall be taken to have agreed to the same.'

" The question to be settled here is not like the ordinary questions which arise whenever a corporation, intending to extend its legitimate business, obtains legislation enlarging its powers, and compelling its members to raise the necessary funds. This legis-

[Union Canal Co. *v.* Gilfillin.]

lation endeavors to destroy the right of a creditor, simply because he remains silent. That this cannot be done appears to be certain.

"1. Because the bondholder is a creditor of the corporation, and as a creditor holds a contract with the company for the payment of money, which contract is protected by the laws of this state and the Federal constitution.

"2. While there may be cases in which silence may, by a jury, be interpreted to mean consent, this is not one of them, for the debtor has no right by legislation to impose terms upon a creditor not within the intent and meaning of the original contract.

"These points seem to us to be so clear as to require little, if any, argument to sustain them. That the claim of the plaintiff is based upon a contract is not denied. To declare that he shall by any legislation lose the fruit of it, is to break the contract, and when an attempt is made in that direction, the creditor simply points to his bond. He may be very foolish to act thus, or he may be very wise; that is nothing to us; he simply clings to his bargain, and that he has a legal right to do. Can a debtor impose terms upon a creditor, or compel him to speak if he chooses to remain silent? Such has not yet been determined to be the law as between private persons, and the most powerful corporation has not yet obtained greater rights.

"This contract declared that upon such a sum of money, such an amount of interest shall be paid. This Act of Assembly, after providing how the debts of this corporation shall be consolidated or reduced, at a joint meeting of directors, stockholders and bondholders, provides that any creditor who does not dissent within three months 'shall be taken to have agreed to the same.' Between private individuals the proposition involved in the section of the act now under consideration, would be so absurd as to be unworthy of consideration. I owe A. a debt, and inform my creditor that in one week I will pay fifty per cent. thereof in full payment and satisfaction thereof, and if he does not object he will be taken to have agreed to my proposition. Would my creditor be bound by his silence? We think not. Is the case different because a corporation is the debtor? In answer to this inquiry, it may be contended that public interests may require another construction of the law. That may be the case, where the questions arise between the directors and the stock and bondholders of a concern, and involve methods of management, and of finance, additional and extensive corporate powers, and the legitimate exercise thereof. All such questions may be settled by a majority vote, but where the issue is between the corporation and a creditor who desires to be paid his debt, we find no difference between a private debtor and a corporation; and as by this contract the creditor has a legal right to demand the payment of his money, no legislation can destroy this right, because it cannot compel him to speak.

12 Norris—7

[Union Canal Co. *v.* Gilfillin.]

"Judgment for plaintiff on case stated."

The defendant took this writ, alleging that the court erred in entering judgment for the plaintiff.

*Thomas Hart, Jr.*, for plaintiff in error.—It is not pretended, as the court below seems to have assumed was the defendant's position,-that any debtor, either individual or corporate, can, of his or its own motion, call upon a creditor to do some act, or otherwise be barred of the right of action. The question is, can not the legislature pass a *law* providing, under certain circumstances, that creditors, either of a corporation or individual, shall do an act simply to signify their own minds, and provide, protecting all those who do express themselves, that those who remain silent and passive shall be considered as agreeing to the proposed measure? It is certainly no new idea, and has been a frequently occurring provision in legislation: Acts of February 17th 1847, Pamph. L. 142; April 7th 1852, Pamph. L. 261; April 10th 1852, Pamph. L. 316; April 17th 1861, Pamph. L. 319; April 11th 1862, Pamph. L. 422. In general legislation we also find like provisions: Acts of May 16th 1861, Purd. Dig. 1223, pl. 52; March 24th 1865, Purd. Dig. 1225, pl. 63; March 7th 1861, Pamph. L. 88.

These acts suggest the principle upon which all legislation of this nature is to be sustained; that it is, in fact, a statute of limitations, providing a time, short if you please, but necessarily so, within which the dissatisfied stockholder or bondholder must assert his rights.

The act under consideration is a simple act of limitation, giving the bondholder three months within which he must act, if at all. A remedy is provided, by following which, his rights will be preserved, but that remedy must be followed within the time prescribed.

The seventh section of the Act of April 27th 1855, Pamph. L. 369, which was a statute of limitations as to ground-rents, and which provided for its going into effect within three years from the passage of the act, has been held to be retrospective and constitutional: Korn *v.* Browne, 14 P. F. Smith 55.

The case of the Philadelphia, Wilmington & Baltimore Railroad Co. *v.* Cowell, 4 Casey 329, is a significant one upon the subject of a party's silence, and its effect in the way of ratification. See also Martin *v.* Pensacola & Georgia Railroad, 8 Fla. 370; North Carolina Railroad Co. *v.* Leach, 4 Jones 340; Ireland *v.* Palestine, &c., Turnpike Co., 19 Ohio 369; Terry *v.* Anderson, 5 Otto 628. See also the following cases as to the constitutionality of the stay laws: Chadwick *v.* Moore, 8 W. & S. 49; Breitenbach *v.* Bush, 8 Wright 313; Coxe *v.* Martin, Id. 322.

[Union Canal Co. *v.* Gilfillin.]

*J. Duval Rodney*, for defendant in error.—The several Acts of Assembly referred to by plaintiff in error, have never been the subject of judicial scrutiny as in this case, and it will not be contended that a mere multiplicity of defective enactments will make any one of them legal.

As to the cases cited, they are one and all in support of a principle which is not denied, viz.: that stockholders may be affected by their fellows, with or without the aid of a legislature, but to the case of the defendant in error, who is a bondholder, they can have no application.

Mr. Justice PAXSON delivered the opinion of the court, March 1st 1880.

We find nothing in the Act of April 10th 1862 relating to the Union Canal Company that is objectionable upon constitutional grounds.    The object of the act was to provide a scheme to relieve the company from its financial difficulties.    It had issued bonds to the amount of $2,500,000, which were secured by a first mortgage.    The coupons upon these bonds had been unpaid for years. The scheme contemplated the surrender of the over-due coupons by the bondholders, and the funding of them by the company in a new issue of bonds to the extent of $500,000, to be secured by the same mortgage.    The last series of bonds were to be used in settling the liabilities of the company.    This would make the whole amount of bonds $3,000,000, the coupons upon all of which were to be paid out of the net income, revenues and profits of the company, after May 1st 1861, and not otherwise.    In other words, if the company earned no profits, the bondholders were to receive no interest.    The act further provided for the calling of a public meeting of the stockholders and bondholders, whereat said stockholders and bondholders, voting separately, might enter into an agreement providing for carrying out the provisions of the act. But here the legislature appears to have taken especial care not to abridge or impair the rights of dissenting bondholders.    Those who refused to enter into the agreement were not to be bound thereby.    Up to this point there certainly was nothing to impair the obligation of the contract between the company and its bond holders.    But the act contained the further provision that every bondholder who " shall fail to file with the president of said corporation, his or her refusal in writing to concur in the said agreement, within three months from the date thereof, such bondholder shall be taken to have agreed to the same."    The learned court below held this provision to be unconstitutional in this, that it impaired the obligation of the contract between the company and the bondholder.

It may be conceded that a debtor, whether a natural or an artificial person, cannot say to his creditor: Unless you signify your

dissent from a certain proposal by a given time, I will hold you to a consent; and act accordingly. The question here is, may the legislature, as the representatives of the people, in the exercise of the sovereign will, require a creditor of an embarrassed corporation, to express his will within a reasonable time, in regard to measures believed to be essential to the interests of both creditors and stockholders. The power of the legislature is supreme, except where restrained by the fundamental law. No presumption arises that a law is unconstitutional; on the contrary, every presumption is in favor of the constitutionality of an Act of Assembly.

As bearing upon this question it is proper to say, that we have upon our statute books a large amount of legislation in which the principle embodied in the Act of 1862 is distinctly recognised. It is not new, and I am not aware that its constitutionality has ever before been doubted. The Act of February 17th 1847, Pamph. L. 142, entitled "An act for the relief of the creditors of the Philadelphia, Germantown and Norristown Railroad Company," contains a provision substantially similar to the one in question. So does the Act of April 7th 1852, Pamph. L. 261, passed for the protection of the creditors of the Schuylkill Navigation Company. The same principle will be found in the Acts of April 10th 1852, Pamph. L. 316 and April 17th 1861, Pamph. L. 319, relating to the Susquehanna Canal Company, and the Act of April 11th 1862, Pamph. L. 422, for the relief of the Chester Valley Railroad Company. The question now under consideration does not appear to have been raised under either of the above-mentioned acts, and their existence cannot therefore be accepted as conclusive evidence of their constitutionality. They come to us, however, with the approval of two of the co-ordinate departments of the government, and the fact that they have been acted upon in the adjustment of large and important interests for so many years is not without weight in the consideration of a question of this kind.

It is not difficult to find in the general legislation of the state much that bears a close analogy to this section of the Act of 1862. Thus the Act of 16th May 1861 (Purd. Dig. 1223), authorizing the merger of one railroad company by another, provides that the remedy thereby given to dissatisfied stockholders shall be pursued within thirty days after the execution of the agreement for consolidation. The Act of 24th March 1865 (Purd. Dig. 1225), authorizing the consolidation of railroad companies, contains a like provision. It is true these acts affect the stockholders who may be presumed to have bought their stock subject to the general legislative power of control over the affairs of corporations. In like manner a creditor must be presumed to have bought his bond subject to such power so far as it exists, and to the general right of the legislature to change or modify his remedy to a reasonable extent, and so that it shall not deny his right.

[Union Canal Co. *v.* Gilfillin.]

All of the foregoing legislation comes within the recognised power of the General Assembly to pass statutes of limitation and stay laws. The constitutionality of such laws has been so often decided that it would be an affectation of learning to cite the authorities. The one question that arises in all such cases is the reasonableness of the limitation. The third section of the Act of 1862, is an act of limitation. It takes away no man's right, and violates no man's contract. The creditor may dissent, and is not thereafter affected by the proceedings. All that is required of him is to express his will in a particular way within three months. No one can or does pretend that the time given is unreasonable. May then the creditor be required to signify his dissent upon pain of being held to an assent in case of neglect to do so? The argument that the law cannot compel a creditor to do any act in order to preserve his claim is unsound. He may be compelled to act. The Statute of Limitations is a case in point. It compels the creditor to sue within the statutory period or lose his claim. A man must so exercise his rights in a community of law as not to needlessly embarrass or injure the rights of others. All this Act of Assembly does is to require the creditor to say whether he will accept or refuse the agreement. The rights and interests of other parties require that he shall do this. There are many instances in the laws relating to insolvents, where a creditor is bound by the act of the majority, or of a given number of creditors not less than a majority. Of this nature is the seven years' exemption from execution on consent of a majority in number and value of the insolvent's creditors, contained in the Act of 1836. The Bankrupt Act contains provisions which recognise the same principle. All this leads to the conclusion that there is power in the law to require a creditor of an embarrassed corporation or individual to indicate his dissent from measures deemed essential to the common welfare of creditors and debtors, or else suffer the very mild penalty of being held to an assent. And this violates no right of the creditor guaranteed to him by the fundamental law.

The judgment is reversed, and judgment is now entered for the defendant below upon the case stated.

Justices MERCUR and GORDON dissented.